IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY_____D.C.
NOV 17 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

GABRIEL J. SOSA, individually
and on behalf of all others similarly situated,
Plaintiff,

CLASS ACTION COMPLAINT

V.

Jury Trial Demanded

Kellermeyer Bergensons Services, LLC,
Hospitality Staffing Solutions, LLC (DE),
Hospitality Staffing Solutions, LLC (FL).
Defendants.

Plaintiff Gabriel J. Sosa ("Sosa" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIMS

1. This is an action against Kellermeyer Bergensons Services, LLC, and or Hospitality Staffing Solutions, LLC (DE) and or Hospitality Staffing Solutions, LLC (FL) (collectively, "Defendants").

2. Mr. Sosa brings this claim on his own behalf and that of proposed classes of all others similarly situated against Defendant for violating their rights under the:
   - The Fair Credit Reporting Act ("FCRA"), and
   - 15 U.S.C. § 1681,

3. Mr. Sosa sought employment with Defendant. He was qualified for the job and given a conditional offer of employment which Defendant subsequently rescinded based on criminal history information revealed on a background check (also known as a "consumer report") obtained by Defendants.

4. Defendants failed to provide Mr. Sosa with the disclosure of the Defendant's' intentions to run a background check and Defendant never received written pre-authorization from Mr. Sosa, as per FRCA.

5. Defendants failed to provide Mr. Sosa with the information they relied upon when denying him employment based on his criminal record, including a copy of his background check and/or a written summary of any conversations Defendants had with Mr. Sosa. Further, Defendants never asked Mr. Sosa for information regarding the circumstances of his criminal history, for evidence of his rehabilitation or good conduct, or even whether his background check was accurate.

6. Defendants' actions violate the FCRA—which is concerned with ensuring that job applicants are provided with crucial information regarding the criminal history information being used to deny them employment and their legal rights and remedies.

7. Before taking adverse action against Mr. Sosa and other job applicants, Defendants failed to provide them with copies of their consumer reports, a statement of rights under the FCRA, which violates Section 1681(b)(b)(3) of the FCRA.

8. Defendants' actions caused concrete injury to Mr. Sosa and other job applicants. Through their actions, Plaintiff and other job applicants were illegally denied employment. Further, Defendants' actions prevented them from reviewing their consumer reports and the bases for Defendants' denials of employment, explaining or contextualizing their conviction histories, correcting inaccurate or incomplete information, otherwise challenging their denials of employment,

9. Defendants' have willfully violated the law.

10. On behalf of himself and others similarly situated, Mr. Sosa seeks statutory damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses associated with this action.

## CONSUMER PROTECTIONS AND CRIMINAL BACKGROUND CHECKS

11. Employers that obtain an applicant's or employee's criminal history information from consumer reporting agencies (CRAs) also must follow the Fair Credit Reporting Act (FCRA). For example, FCRA requires employers to:

- Get applicants permission before asking a CRA for a criminal history report;
- Give applicants a copy of the report and a summary of applicants rights under FCRA before taking a negative employment action based on information in the report.
- Send applicants certain notices if it decides not to hire or promote applicants based on the information in the CRA report.

## STATUTORY BACKGROUND

12. The FCRA was enacted "to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumers' right to privacy," FCRA § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate, FCRA § 1681(b).

13. Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes. See 15 U.S.C. § 1681a(d)(1)(B). Congress enacted Section 1681b(b)(3) so that applicants would be provided with a copy of their consumer report and a statement of their FCRA rights before any adverse action was taken against them. See 15 U.S.C. § 1681b(b)(3).

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any "court of competent jurisdiction" and 28 U.S.C. 1331.
15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants' has nine recruiting offices that reside in this District and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.
16. Therefore, the jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331, and venue lies properly in this District and Division pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

**Plaintiff Gabriel J. Sosa**

17. Mr. Sosa and the proposed Class Members he seeks to represent are "consumers" as defined by the FCRA.
18. Mr. Sosa has a criminal history.
19. Mr. Sosa is a Latino resident of Miami Dade County, Florida.

**Defendant**

20. Defendants' Kellermeyer Bergensons Services, LLC is a  who owns and operates the Hospitality Staffing Solutions, LLC ("HSS Staffing"). HSS Staffing is a Delaware limited liability company that maintains a branch in Miami-Dade, Florida by way of a foreign limited liability company registered in the State of Florida also known as Hospitality Staffing Solutions, LLC.
21. At all relevant times, Defendants' have each been a "person" using "consumer reports" of Plaintiff and proposed Class Members for "employment purposes" and have taken "adverse action" against Plaintiff and similarly situated applicants, as defined by the FCRA.
22. At all relevant times, Defendants have been aware of the requirements of the FCRA, and yet have disregarded those requirements.

## STATEMENT OF FACTS

**Plaintiff Sosa's Facts**

23. In approximately November 2021, Mr. Sosa applied to work for Hospitality Staffing Solutions, LLC, a company operated by and/or Kellermeyer Bergensons Services, LLC,.
24. As part of the application process, Mr. Sosa interviewed in approximately November 2021 with an employee of Hospitality Staffing Solutions, LLC.
25. During the interview the employee asked Mr. Sosa all the usual questions that are on an employment application questions such as: Full Name, Date of Birth, Social Security Number, Address, Work Experience Etc.,

26. The employee noted all of Mr. Sosa's responses and photographed Mr. Sosa's state issued identification. Further, the employee requested a colored picture of Mr. Sosa's social security card that Mr. Sosa provided the employee by way of a text message.

27. Towards the end of the interview, the HS Staffing employee told Mr. Sosa that he would be hired if he passed a drug test and a background check (which would be provided to him after he passed the drug test). The employee also told him that he was qualified for the position based on his previous work history.

28. After passing the drug test, the employee told Mr. Sosa to please text him a picture of the back of Mr. Sosa's Social Security Card. In addition, the employee told Mr. Sosa he will keep Mr. Sosa updated in regards to the background check results.

29. On November 10, 2021, Defendants sent a follow-up text message stating that they needed the picture of the back of Mr. Sosa Social Security Card to complete and close the work application.

30. Because Mr. Sosa had misplaced his Social Security Card. Mr. Sosa suggested the employee to please consider using the free Social Security Number Verification Service (SSNVS) which allows registered employers to quickly verify whether a person's name and SSN match social security records.

31. Because Defendants were an "e-verify" company the employee stated he needed pictures front and back of Mr. Sosa's Social Security Card if not the application cannot be closed.

32. Further, the employee texted Mr. Sosa stating "about your background, still shows as pending".

33. In addition, the recruiter sent an image of a desktop with an internal dashboard view for HS Staffing employee's. The site showed Mr. Sosa's background check was sent to Asurint, a background screening company. Also, the image showed an order status pending and the following vendor order number 439911987 and a result link to view Mr. Sosa's pending background report.

34. The report was currently in a "pending" status which according to the Asurint company it means it is not yet complete. That the report may still change or have items added before it is finalized. Nevertheless, the report already had a substantial part of Mr. Sosa's recent criminal record.

35. A few minutes later the employee texted Mr. Sosa and stated to " Just forget it, We will not be moving forward with the application".

36. Mr. Sosa asked Why? And asked to speak with a supervisor.

37. The employee then blocked Mr. Sosa's phone number, effectively stopping the receiving of text messages from Mr. Sosa.

38. Mr. Sosa then texted the employees company phone number asking why he decided to not move forward with the work application? Further, Mr. Sosa asked the employee to please allow him to speak with a supervisor.

39. Mr. Sosa has not heard back from the Defendants'.

40. Mr. Sosa never received a disclosure of the Defendants' intentions to run a background check and Employers' never received written pre-authorization from Mr.Sosa, per FCRA requirements.

41. Mr. Sosa never received any of the following: job application, copy of his consumer report or any inquiry conducted on him, nor a statement of his FCRA rights.

42. Because Defendants never provided Mr. Sosa with crucial information regarding his denial of employment, Mr. Sosa was unaware of what information was being reported on him, unable to review the information reported about him for accuracy and completeness, contextualize even true information, review Defendants' arguments (if any) for why they might have believed his convictions barred him from employment, and/or explain why he was nonetheless entitled to employment, including any evidence of rehabilitation and good conduct.

43. Defendants also never asked Mr. Sosa whether the consumer report was accurate.

44. During the entire relevant period, Mr. Sosa resided at the same address known to Defendants.

## FACTUAL ALLEGATIONS COMMON TO ALL PARTIES

**The Fair Credit Reporting Act.**

45. The FCRA was enacted in 1970. Through its passage, Congress required that consumer reports be "fair and equitable to the consumer" and protect a "consumer's right to privacy" through "adopt[ing] reasonable procedures" to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of information contained within consumer reports. 15 U.S.C. §§ 1681(a)(4)-(b).

46. Congress requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer to whom the report relates" with:

> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3)[.]

**15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).**

47. The FCRA defines adverse action as both "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii) and (iv).

48. Upon information and belief, Defendants' have routinely and systematically failed to provide Mr. Sosa and other job applicants with their consumer report and a summary of their rights under the FCRA before taking adverse actions against them.

49. In Congress's judgment, an employer's failure to provide a consumer with his or her consumer report and a summary of his or her rights under the FCRA are both harms sufficient to establish Article III standing.

50. Without notice that a consumer report is going to be used to take adverse action against them, job applicants are hindered in their ability to preserve their privacy, provide context for their criminal histories, or correct errors or other problems with the report.

51. Defendants' failure to provide this information also created the risk that Mr. Sosa and other job applicants would not discover inaccuracies in their reports and the risk that they would fail to seek to vindicate their right under the FCRA because they would not know of those rights.

52. Defendants' have acted willfully in violating the FCRA. Employers' knew or should have known their obligations under the FCRA. These obligations are well-established by the plain

language of the FCRA, in the promulgations and opinion letters of the Federal Trade Commission, and in longstanding case law.

53. Further, Employers' are required to certify to the consumer reporting agency that it will comply with the FCRA's stand-alone disclosure and authorization requirements. See 15 U.S.C. § 1681b(b)(1)(A).

54. Despite Employers' awareness of their legal obligations, they have acted recklessly and willfully in breaching their known duties and depriving Mr. Sosa and other job applicants of their rights under the FCRA.

## CLASS ACTION ALLEGATIONS

55. Mr. Sosa brings this charge as a proposed Class action pursuant to Federal Rule of Civil Procedure ("Rule") 23 on behalf of himself and one class of persons (collectively, the "Class").

56. Mr. Sosa asserts the First Cause of Action against Defendants on behalf of the "FCRA Consumer Report Class" defined as follows:

> **FCRA Consumer Report Class:** All individuals who, during the applicable five year statute of limitations period, were subjected to an adverse action by Defendants at least in part because of information in their consumer reports without first being provided with a copy of their consumer report and/or a statement of their rights under the FCRA.

57. Mr. Sosa reserves the right to amend the definition of above-defined classes based on discovery or legal developments.

58. The Class Members identified herein are so numerous that joinder of all members is impracticable. Defendants' are large employers. Nonetheless, the number of job applicants harmed by Employers' violations of the law are far greater than feasibly could be addressed through joinder. The precise number is uniquely within Defendants' possession, and Class Members may be notified of the pendency of this action by published and/or mailed notice.

59. There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include, among others:
   (a) whether Defendants' violated the FCRA by failing to provide Mr. Sosa and the FCRA Consumer Report Class with a clear and conspicuous disclosure of the Defendant's intentions to run a background check and receive written pre-authorization from them in violation of 15 U.S.C. § 1681b(b)(2)(A)(i),(ii).
   (b) whether Defendants' violated the FCRA by failing to provide Mr. Sosa and the FCRA Consumer Report Class with a copy of their consumer report before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(i)
   (c) whether Defendants' violated the FCRA by failing to provide Mr. Sosa and the FCRA Consumer Report Class with a written description of their rights under the FCRA before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);
   (d) whether Defendants' actions caused informational injury to Mr. Sosa and Class Members, and whether Defendants' actions violated the privacy of Mr. Sosa and Class Members;

    (e) whether Defendants were willful in their noncompliance with the requirements of the FCRA.
    (f) whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class Members are warranted; and
    (g) whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

60. Mr. Sosa is a member of the class he seeks to represent. Defendants' took adverse action against Mr. Sosa without providing Mr. Sosa a copy of his consumer report or information used to deny him employment, a written summary of his rights under the FCRA, and failed to provide Mr. Sosa with time to respond to that information (including holding the position open during that time).

61. Mr. Sosa's claims are typical of the claims of the class he seeks to represent. Upon information and belief, it is Defendants' standard practice to take adverse actions against applicants without the notice requirements of the FCRA. Mr. Sosa is entitled to relief under the same causes of action as other Class Members.

62. Mr. Sosa will fairly and adequately represent and protect the interests of Class Members because his interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent. Mr. Sosa will retain Counsel who are competent and experienced in complex class actions, including litigation pertaining to criminal background checks, the FCRA, other employment litigation, and the intersection thereof. There is no conflict between Mr. Sosa and the Class Members.

63. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.

64. Class certification is appropriate under Rule 23(b)(3) for the FCRA Consumer Report Class because common questions of fact and law predominate over any questions affecting only individual Class Members. For example, Defendants' have maintained a common policy of taking adverse action without first providing applicants with copies of their consumer reports and/or a written description of their rights under the FCRA. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. Because Defendants' have maintained a common policy of failing to properly inform Class Members of their rights under the FCRA before taking adverse actions, many Class Members are likely unaware that their rights have been violated.

65. Questions as to the propriety and scope of declaratory and injunctive relief regarding Defendants' conduct will be common to Class Members. Moreover, the amount of each Class Member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. The FCRA has statutorily specified damages, which Class Members will prove at a trial are warranted, that will render calculation of damages for Class Members straightforward. The propriety and amount of exemplary and punitive damages are based on Defendants' conduct, making these issues common to Class Members.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### Employers' Failure to Provide Consumer Reports and Notices Before Adverse Actions
### (15 U.S.C. § 1681b(b)(3)(A), Brought by Mr. Sosa on Behalf of Himself and the FCRA Consumer Report Class)

66. Mr. Sosa, on behalf of himself and the FCRA Consumer Report Class, incorporates the preceding paragraphs as alleged above.

67. Defendants' violated the FCRA by taking adverse employment actions against Mr. Sosa and the FCRA Consumer Report Class based in whole or in part on the information contained within their consumer reports.

68. Before taking these adverse employment actions, Defendants' failed to provide Mr. Sosa and the FCRA Consumer Report Class with a clear and conspicuous disclosure of the Defendant's intentions to run a background check and receive written pre-authorization from them.

69. Before taking these adverse employment actions, Defendants' failed to provide Mr. Sosa and the FCRA Consumer Report Class with a copy of their consumer reports and a reasonable amount of time to respond.

70. Before taking these adverse employment actions, Defendants' failed to provide Mr. Sosa and the FCRA Consumer Report Class with a written description of their rights under the FCRA.

71. These failures are each separate violations of the FCRA.

72. Defendants' policy caused concrete injury (including the risk of harm) to Mr. Sosa and the FCRA Consumer Report Class, including because they could not:
    (a) evaluate information contained in the consumer reports to ensure accuracy;
    (b) challenge and correct that information;
    (c) explain the circumstances surrounding that information (even if accurate);
    (d) explain why information reported should not preclude employment;
    (e) explain why information that was different on the consumer report than the application should not preclude employment; and
    (f) learn of their rights and opportunities under the FCRA, including the opportunity to bring suit under the FCRA.

73. Employers' acted willfully and in a knowing or reckless disregard of its obligations and the rights of Mr. Sosa and the FCRA Consumer Report Class.

74. Employers' willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A) and 15 U.S.C. § 1681b(b)(2)(A)(i),(ii).

75. Employers' willful conduct is still further reflected by the following:
    (a) The FCRA was enacted in 1970, and Defendants have had years to become compliant, the plain meaning of which is clear;
    (b) Employers' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;
    (c) Employers' repeatedly and routinely took adverse action based in whole or in part on information contained in a consumer report before providing consumers with a copy of the consumer report or FCRA rights; and
    (d) By adopting such a policy, Employers' voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

76. As a result of Defendants' actions, Mr. Sosa and the FCRA Consumer Report Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action, and have had their privacy invaded.

77. Defendants' willful conduct makes them liable for statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Sosa and Class Members pray for relief as follows:

(a) Certification of the case as a class action on behalf of the proposed classes;
(b) Designation of Plaintiff Sosa as representative of Class Members;
(c) Designation of Plaintiff's counsel of record as Class Counsel;
(d) Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices; and
(e) An award of all actual and/or statutory damages awardable for violations of the FCRA including punitive damages for each violation found to be willful;

DATED: MIAMI, FLORIDA
Wednesday, November 17, 2021

RESPECTFULLY SUBMITTED,
BY: GABRIEL J. SOSA
(786) 606-3783
miamimarineconstruction@gmail.com
5901 NW 182 LN APT 202 HIALEAH, FLORIDA, 33015